**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**ROBERT J. LUTZ**

*Plaintiff(s)*  No:  2:20-CV-829

v.

**THE TOWNSHIP OF NORTH FAYETTE,**
**and DETECTIVE DONALD J. COKUS, JR.**
**(in his official capacity and as an individual),**    **JURY TRIAL DEMANDED**

*Defendant*(s)

## INTRODUCTION

This action arises under the Fourth, and Fourteenth Amendments to the United States Constitution; under federal law,  specifically, Title 42 U.S.C. §§ 1983, 1985, 1986 and 1988; and under Pennsylvania law for Malicious Prosecution, Abuse of Process, False Imprisonment and Imprisonment, and Punitive Damages

While the Defendant(s) was/were acting with in the scope of their elected, and/or appointed offices and employment and under color of state law, they maliciously, negligently, recklessly, and/or intentionally violated the due process of the Plaintiff, Fourth Amendment Seizure, along with various torts of the Commonwealth of Pennsylvania.  The malicious, negligent, reckless, and/or intentional actions of the Defendants caused injury to the Plaintiff(s) without due process of law.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

1331, 1343, and 1367.  Venue is properly set in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. 1391.

The following causes of action alleged arise from myriad of injuries to the Plaintiff occurring in this judicial district, Pittsburgh Division, Allegheny County.  The named Defendants all have their nexus in this judicial district.

## PARTIES

1.   Plaintiff, Robert J. Lutz, also known as Bobby Lutz, "Bob Lutz", is an American citizen who resides in North Fayette Township, Oakdale, Pennsylvania, 15071.

2.   Defendant, the North Fayette Township, is a second class Pennsylvania township, with a business mailing address of 400 North Branch Road, Oakdale, PA 15071.

3.   Defendant, Donald J. Cokus, "Cokus," is employed as a detective with the North Fayette Township Police Department, with a business mailing address of 400 North Branch Road, Oakdale, PA 15071.

## BACKGROUND FACTS

4.   Plaintiff, Bob lutz, (61 years old at the time of his unlawful arrest and malicious prosecution), has struggled with drug and alcohol dependency problems for most of his adult life.

5.   Plaintiff Bob Lutz's life from birth until the time the unlawful actions of the Defendants that gave rise to this complaint, while certainly not free from unlawful activity in general, was free of any allegations of unlawful sexual controversies, especially unlawful sexual contact that involved minors.

6.   Plaintiff Bob Lutz, during the period of time described in this complaint was never been

investigated or arrested for anything related to sexual impropriety towards minors, or any activities that might promote the corruption of minors.

7.    Plaintiff Bob Lutz never had a reputation for engaging in any sexual impropriety towards adults, and especially not towards children.

8.    At the time of his unlawful arrest and malicious prosecution, Plaintiff Bob Lutz had six (6) minor grandchildren.

9.    Plaintiff Bob Lutz's friends, relatives, and neighbors can testify unequivocally to Plaintiff Bob Lutz's character and reputation in this subject matter towards all minor children.

10.    Plaintiff Bob Lutz lives with and takes care of his elderly mother, Violet Lutz.

11.    Violet Lutz was 88 years old at the time of Bob Lutz's unlawful arrest and malicious prosecution, was (and is currently)  under Bob Lutz's care due to her advanced age and invalid health status.

12.    Violet Lutz lives with her son, Bob Lutz, and relies on Bob Lutz not only for financial support, but also for her daily physical care.

13.    On or about May 25, 2017, an incident occurred in  neighboring Findlay Township, in which Plaintiff Bob Lutz was accused of touching a minor female, when the 13 year old  was picked up with her boyfriend possessing a small amount of marijuana.

14.    Findlay Township Patrolman Amaya took the initial statements from the  minor female, when at that time the minor explained her reason for smoking weed was because Bob Lutz had touched on her breast and groin area two years previous, when she was 11 years old.

15.    Because the alleged touching had occurred at Bob Lutz's residence, Findlay Police contacted  North Fayette Police, and the allegations were directed  to Defendant North Fayette

Township employee, Detective Donald J. Cokus, Jr.

16.     On or about May 31, 2017, Defendant Donald J. Cokus, Jr., "Cokus," telephoned Plaintiff Bob Lutz and ordered Bob Lutz to come to the North Fayette police station.

17.     Bob Lutz had no idea why he was being summoned to the police station, but because he was on probation for a DUI, Bob Lutz believed he had no choice but to fully cooperate.

18.     Bob Lutz informed Cokus that he was currently working, that he did not have a driver's license, and had no one to drive him to the police station, and that he would have to catch and ride a bus to the stop closest to the police station,  and from there would walk from the bus stop (over two (2) miles) to the station.

19.     While walking the final leg of his travels to the police station, Cokus called again demanding to know why Bob Lutz was not yet at the station.

20.     Plaintiff Bob Lutz informed Cokus that he was walking the final leg of the trip and that he still was about a mile and a half from the police station.

21.     Cokus, very impatient that Bob Lutz was not already at the station, stated that he was coming to pick Bob Lutz up and drive him directly to the North Fayette police station.

22.     Cokus picked up Plaintiff Bob Lutz in an unmarked vehicle and drove Bob Lutz to the North Fayette police station.

23.     Bob Lutz felt that he had no choice but to get into the unmarked car and go with Cokus.

24.     Plaintiff Bob Lutz was unaware of the subject matter of Cokus' summons, but clearly understood from the two phone conversations that the matter was serious,  and describes those telephone conversations with Cokus as "frightening."

25.     Plaintiff Bob Lutz believed that Cokus was ordering him to the police station to answer

questions.

26.    Plaintiff Bob Lutz did not believe that he had a choice to refuse to go the police station,

27.    Plaintiff Bob Lutz did not believe that he had a choice to refuse to submit to the Cokus interview.

28.    Plaintiff Bob Lutz was unaware of the subject matter of the summons by Cokus , and when he arrived at the police station, he was placed in a very small room without video cameras.

29.    At that moment Cokus, drew close and threateningly stared at Plaintiff Bob Lutz and stated, "Bob, we know you did it. Just confess because you are going to get arrested anyway."

30.    Understandably, Bob Lutz expressed his confusion as to what Cokus was talking about, whereupon Cokus explained the allegation of touching the minor female two years previously at Bob Lutz's house.

31.    Cokus was emphatic that Bob Lutz was going to be arrested and go to jail unless Bob Lutz cooperated and wrote out a confession.

32.    Because Plaintiff Bob Lutz was on probation for a DUI, he was terrified that any violation of his probation would result in his immediate incarceration.

33.    Plaintiff Bob Lutz desperately sought to avoid being arrested because he did not want to leave his octogenarian mother (Violet) by herself without anyone to take care of her.

34.    Plaintiff Bob Lutz also did not want to go to jail.

35.    Bob Lutz attempted to placate Cokus and avoid arrest and incarceration by verbally saying he may have touched the minor accuser's chest by accident, but that he never touched the minor accuser's vaginal area

36.    No recording of this verbal confession is extant.

37.     After the verbal confession, Cokus removed Bob Lutz from the interview room to a wall mounted counter to allow Bob Lutz to draft and sign a written version of this verbal confession, while Cokus waited alone in the small interview room.

38.     Bob Lutz's first written confession vaguely stated that he may have bumped his arm into the minor girl chest area, and if it did happen, any such touching was accidental and unintentional.

39.     Cokus read the confession, crumpled it up, and threw it into the garbage can next to Bob Lutz.

40.     Cokus then explained the difference between "a bump, a touch, and a rub," and repeatedly asked Bob Lutz which of the three did Bob Lutz do to the minor.

41.     Bob Lutz denied he did any of the three.

42.     Cokus earnestly and intensely and repeatedly explained to Bob Lutz that Bob was going to be arrested away, and if Bob Lutz cooperated, Cokus would keep the arrest out of the newspapers, and that he would also see "what he could do to keep Bob Lutz's name off the sex offenders list."

43.     Bob Lutz was panicked at this point, absolutely believing that he was going to jail that very day and that he would not be able to go home and prepare his mother for what was going to happen.

44.     Cokus again ordered Bob Lutz to write another confession.

45.     When Bob Lutz was finished, Cokus read it and again crumpled it up and threw it into the garbage can next to Bob Lutz.

46.     Cokus at this time changed his demeanor from being forceful to familiar and facilitating,

trying to help Bob Lutz draft an acceptable confession so Bob Lutz could go home.

47.     Cokus at this time suggested that maybe Bob Lutz was drunk at the time of the alleged touching, and maybe forgot what had happened.

48.     Following Cokus' prompts and suggestions, and determined to be allowed to leave the police station to prepare his mother for when he was going to be arrested and taken to jail, Bob Lutz wrote a third confession.

49.     This confession included the key words prompted and suggested by Cokus.

50.     Cokus read the third confession and informed Bob Lutz that Bob could now go home to see his mother and wait for the arrest.

51.     Cokus drove Bob Lutz from the police station and dropped him off at the bottom of Bob Lutz's driveway.

52.     Plaintiff Bob Lutz went into his house, told his mother Violet what just happened, and then telephoned Cokus and stated that he recants what was written in the false confession, and that he only wrote it because he desperately wanted to go home to prepare his mother before he was arrested and taken to jail.

53.     Cokus listened to Bob Lutz's explanation and replied,"Ok. It will all be forgotten then."

54.     Cokus did not tell the truth regarding how the false written confession was coerced, but repeatedly referenced the confession when trying to prove Bob Lutz's guilt.

55.     Throughout the interview  process, Cokus made clear the contempt he had for Plaintiff Bob Lutz, demanding a confession, repeating statements such as "Just confess, because you're going to get arrested anyway. We all know you did it. Cooperate and it will be easier on you."

56.     At the outset of Bob Lutz's interview, several functioning police video cameras existed

throughout the police North Fayette police station, but not in the room where the interview was conducted or the room where the three confessions were written.

57.     The North Fayette police station was fully capable of recording a video interview.

58.     No recording of the interview survives, however, and it is unknown if any of the cameras were turned on at all during that day.

59.     When later asked under oath why no recording survives of the interview of the written confession, Cokus stated he "didn't believe there is a statute that indicates that we have to do that..." and further stated that if cameras are turned on "...people get camera-shy and they clam up."

60.     Cokus also testified that not videoing such interviews was a common practice at the North Fayette police station.

61.     Cokus's behavior, tone, and body language towards Bob Lutz strongly demonstrates Cokus was fully committed to doing whatever it took to make sure Bob Lutz would not be allowed to leave the police station until Bob Lutz signed a confession that satisfied Cokus.

62.     Indeed, Cokus attempted at all times to guide Plaintiff towards a confession without attempting to truly get Bob Lutz's side of the story, or perform professional facts collection that would befit a proper police investigation

### Plaintiff Bob Lutz is Arrested

63.     Plaintiff Bob Lutz was not immediately arrested that day.

64.     The county criminal court summons relating to the alleged touching came in the U.S. Mail roughly two weeks after Cokus' interview.

65.     Bob Lutz was criminally charged with; indecent assault - person less than 13 years of

age (felony 3); unlawful contact with a minor - sexual offences (felony 3); and, harassment (summary).

66.     During this time, until the case was nolle prossed, Bob Lutz was experiencing intense emotional swings in mood, worrying about what was going to happen to him regarding the sex offender charges.

67.     Around that time Bob Lutz's nephew was renting a detached garage at Bob Lutz's house.

68.     The nephew came to Bob Lutz's house and Bob Lutz expressed his displeasure on the nephew's untidiness in and around the garage, and, without further provocation, the nephew punched Bob Lutz in the face and drove off.

69.     Bob Lutz called the North Fayette police to report what happened, and later, Bob Lutz received in the U.S. Mail a criminal citation for summary disorderly conduct.

70.     This summary charge was later dropped at the local magistrate's hearing.

71.     At this time, Bob Lutz was on probation for a DUI and was participating in Allegheny County's DUI Phoenix Program.

72.     The Phoenix Program required monthly "evaluations" before the court to impress upon the participants that they must not get into trouble and stay clean, or their probation will be revoked and they will go to jail.

73.     While at a scheduled evaluation, Bob Lutz was told that he was permitted to leave, when in fact the judge wanted to speak with him about the sex offense charges and the disorderly conduct citation.

74.     Bob Lutz was arrested and taken to jail based upon the false sex offense charges.

75.     Upon appearing before the judge at his bail motion hearing, once the judge heard the sex

offense charge, the judge ended the hearing and ordered him remanded to jail, without Bob Lutz being able to speak.

76.    Bob Lutz remained incarcerated in the county jail for 45 days, until, after two attempts, his counsel persuaded the court personnel that Violet was suffering physical deprivations, and with winter approaching, there was a very serious threat that her health would suffer unless Bob Lutz was released.

77.    Bob Lutz would not have remained in jail for 45 days if not for the malicious, negligent, reckless, and/or intentional actions of Cokus filing of the affidavit of probable cause based upon the coerced false confession.

78.    Adding to Bob Lutz's anxiety was that Judge Donna Jo McDaniel was at that time the Sex Offenders Court judge.

79.    Judge Donna Jo McDaniel was well known at that time to convict everyone accused of any sex offense against a minor.

80.    After Bob Lutz's criminal proceeding ended in his favor, Judge McDaniel was later forced to resign because of her clearly biased handling of many other sex offense criminal proceedings.

81.    Cokus knew of this bias and attempted to fully exploit this fear of being sentenced by Judge McDaniel so as to force Bob Lutz into taking a plea, rather than face a trial in front of "Donna Jo."

82.    Cokus was focused on Bob Lutz being found guilty or accepting a plea to avoid going to prison.

### The Minor Child's Mother is Threatened by Cokus

83.     When the sex offense charges were being investigated, the minor child's mother went to the North Fayette Township to be interviewed by Cokus.

84.     At the interview the mother told Cokus that she did not believe the accusations against Bob Lutz, and that her daughter had deep emotional issues and was lying for ulterior motives.

85.     While leaving the interview, the  mother repeated her statements to Cokus  outlined in paragraph 84 and stated that she will be telling Bob Lutz the same.

86.     Cokus became immediately angry, and ordered her not to contact Bob Lutz, and if she did, .."[s]he would be charged too!"

87.     Cokus's actions to keep this exculpatory information from Bob Lutz were malicious, negligent, reckless, and/or intentional actions to harm Bob Lutz and deny him his civil rights

### The Minor Child Victim Recants Her Allegations for the First Time

88.     After Bob Lutz was released from jail and nervously awaiting the scheduled trial, on December 19, 2017, Cokus, along with the assistant district attorney, and the minor child's divorced parents, heard  the minor child recant her prior accusations made to Cokus regarding Bob Lutz.

89.     In her December 2017 statement, the minor child explained that one time when Bob Lutz, his hands were at his sides, passed her in the narrow hallway, his one hand accidently brushed passed her breast; and, additionally, that he never touched her genital area.

90.     Cokus strenuously pressed that the case should proceed because he believed the minor child was changing her story to please her mother and avoid any public embarrassment at school.

91.     Cokus state of mind to pursue and win the case against Bob Lutz regardless of the evidence was such that Cokus was overheard by a cousin of Bob Lutz's stating that "he (Cokus) never lost a case he started," meaning that he would win Bob lutz's case.

92.     Cokus overruled the minor child's mother's objections and insisted that the trial proceed.

**The Minor Child Victim Recants Her Allegations for the Second Time**

93.     After a jury had been selected, the evening before the first day of trial, the minor child's mother contacted Bob Lutz's counsel and informed him that the minor child had recanted the accusations again, and that all the allegations of touching were lies.

94.     The next morning (June 4th, 2018) before the judge came out of chambers, Bob lutz's counsel confided to the assistant district attorney ('ADA') that he must speak with the minor child.

95.     The ADA, Cokus, the minor child's mother, and the minor left the courtroom for an extended period of time.

96.     The mother and the minor child returned to the courtroom and resumed their seats.

97.     Approximately one hour later the ADA and Cokus entered the courtroom and filled out a Petition for Nolle Prosse form and submitted the petition to the clerk for the judge to sign.

**Plaintiff Bob Lutz Suffered Economic, Emotional and Physical Harm Because of Cokus' Actions**

98.     Because of Cokus  malicious, negligent, reckless, and/or intentional actions of the Plaintiff Bob Lutz was publically shamed as a sex offender.

99.     While Bob Lutz was incarcerated, he lost his job.

100.    When he was released from jail, he was not rehired, and he could not find alternate work because of the outstanding charges of being labeled a sex offender of children under 13 years

old.

101.    Bob Lutz lost sleep, and did not have a full night sleep during the pendency of the sex offender case.

102.    Bob Lutz was afraid to leave his house for fear that the North Fayette police would arrest him on any minor offense and he immediately would go back to jail.

103.    Bob Lutz obsessed and worried that his friends and family did not believe in his innocence

104.    Bob Lutz was shunned and physically forced out of the Oakdale Inn because one of the patrons said, "There's that child molester!"

105.    Bob Lutz's fear and anxiety over the sex office charges manufactured by Cokus manifested itself physically in that Bob Lutz became impotent.

106.    Violet Lutz was shamed and embarrassed that her son was charged by Cokus for being a sex offender of children under 13 years old.

107.    Violet Lutz was afraid at night when she was alone in Bob Lutz's house while her son was incarcerated because of the sex offense charges manufactured by Cokus .

108.    Violet Lutz's physical health suffered and deteriorated over stress and worry as what was going to happen to her son if he was convicted and sent to prison.

109.    Violet Lutz's physical health suffered and deteriorated over stress and worry as what was going to happen to her if her son would not be around to take care of her.

110.    Violet Lutz suffered a heart attached because of the worry and stress because of the sex offense charges manufactured by Cokus .

111.    Violet Lutz suffered the attendant financial expenses  associated with medical care

required as a result of the heart attack

112.     Violet Lutz spent at least one night without the benefit of heat due to the absence of Bob Lutz and was generally subject to anxiety and distress which rendered sleep difficult if not impossible.

113.     Plaintiff Bob Lutz has been painfully shamed, humiliated and embarrassed by the emotion pain and physical discomfort that his mother, Violet, has suffered because of the sex offense charges Cokus manufactured and pushed against Bob Lutz, before and after the trial.

114.     Because of the negative stigma and notoriety of the sex offense charges manufactured by Cokus, Bob Lutz has withdrawn from public life.

115.     Because of the negative stigma and notoriety of the sex offense charges manufactured by Cokus, Bob Lutz has given up looking for employment and took an early retirement, thereby reducing the monthly payment amount he may have received each month for the rest of his retirement.

### **North Fayette Township is Liable for Cokus's Actions**

116.     North Fayette Police Department is a subdepartment of North Fayette Township.

117.     The employees of the North Fayette Police Department are the responsible to North Fayette Township.

118.     The actions of Cokus were committed during the course of his employment with this employer, North Fayette Township and North Fayette Township Police Department.

119.     The actions of Cokus were committed within the scope of his authority during the course of his employment with his respective employer, North Fayette Township and North Fayette Township Police Department.

120.    The conduct of Cokus was of the kind and nature that he was employed to perform during the course of his employment with his employer, North Fayette Township and North Fayette Township Police Department.

121.    The conduct of Cokus occurred within the authorized time and space limits of his employment with his respective employer, North Fayette Township and North Fayette Township Police Department.

122.    The conduct of Cokus was actuated with the intent and purpose to serve his respective employer, North Fayette Township and North Fayette Township Police Department.

123.    The acts of maliciously, intentionally, or with reckless negligence violating the due process rights of the Plaintiff, Fourth Amendment Seizure, along with tort of Malicious Prosecution and Abuse of Process,  used by Cokus against and affecting the Plaintiffs were of the kind and nature that are preventable if the employer selected and retained properly trained and competent employees.

124.    The acts of maliciously, intentionally, or with reckless negligence violating the due process rights of the Plaintiff Bob Lutz, Fourth Amendment Seizure, along with tort of Malicious Prosecution and Abuse of Process, used by Cokus against the Plaintiff was of the kind and nature that are preventable if the employer formulated, adopted, and enforced adequate rules and policies to ensure the acts of properly trained and competent employees.

125.    Defendant North Fayette Township is responsible for the actions of its employees.

126.    The conduct of Cokus violated the Plaintiffs' clearly established statutory and Constitutional rights of which a reasonable person would have known.

<u>**COUNT I**</u>

**ROBERT J. LUTZ vs. THE TOWNSHIP OF NORTH FAYETTE AND DETECTIVE DONALD J. COKUS, JR.;  4th AMENDMENT, 14th AMENDMENTS, §§ 1983, CIVIL RIGHTS ACT**

127.    The previous paragraphs are incorporated by reference as if set forth at length herein.

128.    Plaintiff Bob Lutz was illegally physically arrested , because he did not feel free to leave.

129.    A period of time passed while he was being

130.    Defendant Cokus threatened Plaintiff Bob Lutz that if he did not write a confession that Cokus approved, Cokus would have Plaintiff Bob Lutz arrested and thrown in jail that day.

131.    Defendant North Fayette Township is responsible for Cokus' actions.

WHEREFORE, Plaintiff respectfully request judgement for:

a.    Equitable relief for Plaintiff Bob Lutz's economic damages

b.    Compensation for non-economic damages

c.    Attorney fees, costs, and expenses

d.    Punitive damages from Defendant Cokus only, and

e.    Other such relief as this court deems appropriate.

<u>**COUNT II**</u>

**ROBERT J. LUTZ vs. THE TOWNSHIP OF NORTH FAYETTE AND DETECTIVE DONALD J. COKUS, JR.;  4th AMENDMENT,14th AMENDMENTS, §§ 1983, CIVIL RIGHTS ACT**

132.    The previous paragraphs are incorporated by reference as if set forth at length herein.

133.    Defendant Cokus drafted an affidavit of probable cause based on a coerced confession that he knew contained fabricated facts.

134.    Cokus took the flawed affidavit of probable to the local magistrate to have a criminal complaint and a summons was issued to Plaintiff Bob Lutz.

135.    The summons based on the legally flawed affidavit of probable cause triggered Bob Lutz's probation to be violated causing Bob Lutz to be incarcerated in the Allegheny County Jail for 45 days.

136.    The violation of probation was initiated solely on the grounds of the flawed affidavit of probable cause manufactured by Cokus.

137.    Cokus knew the confession was flawed, and that the affidavit of probable was coerced and contained false evidence.

138.    Cokus' actions directly caused the seizure and incarceration of the Plaintiff Bob Lutz.

139.    Defendant Cokus's premeditated actions caused Plaintiff Bob Lutz to be wrongfully incarcerated in violation of the 4th and 14th Amendments.

WHEREFORE, Plaintiff respectfully request judgement for:

a.      Equitable relief for Plaintiff Bob Lutz's economic damages

b.      Compensation for non-economic damages

c.      Attorney fees, costs, and expenses

d.      Punitive damages from Defendant Cokus only, and

e.      Other such relief as this court deems appropriate.

## COUNT III

**ROBERT J. LUTZ vs. THE TOWNSHIP OF NORTH FAYETTE AND DETECTIVE
DONALD J. COKUS, JR.; FALSE ARREST & IMPRISONMENT STATE TORT**

140.    The previous paragraphs are incorporated by reference as if set forth at length herein.

141.    Plaintiff Bob Lutz was illegally physically arrested , because he did not feel free to leave

the police station until Cokus dismissed him.

142.    Cokus, in an illegally forceful manner, extracted a forced confession, and (a) intentionally acted to achieve the imprisonment of (b) another, i.e., Plaintiff Bob Lutz © within the Allegheny County Jail and (d) Plaintiff Bob Lutz was imprisoned in that jail and (e) Plaintiff Bob Lutz was conscious of the confinement and harmed by it.

143.    Defendant Cokus can be shown to have intentionally acted to achieve Plaintiff Bob Lutz's imprisonment because of the brusk and one dimensional interview he conducted with Plaintiff Bob Lutz.  In Defendant Cokus' own words: "Just confess, you're going to jail anyway."

144.    Further, Defendant Cokus threatened the accuser's mother with criminal charges when she brought forward evidence that could help Plaintiff Bob Lutz's defense.

145.    Plaintiff Bob Lutz was the suffered the illegal confinement perpetrated by Cokus.

146.    Defendant Cokus purposely sought to have Plaintiff Bob Lutz confined within the boundaries of the Allegheny County Jail.

147.    But for Defendant Cokus' actions, Plaintiff Bob Lutz would not have been imprisoned in the Allegheny County Jail, or certainly would not have stayed in jail for 45 days.

148.    Plaintiff Bob Lutz was indeed not only conscious of his confinement, he was harmed by it.

WHEREFORE, Plaintiff respectfully request judgement for:

a.    Actual damages for expenses incurred as a result of the false arrest and imprisonment.

b.    Compensation for non-economic damages

    c.      Attorney fees, costs, and expenses

    d.      Punitive damages from Defendant Cokus only, and

    e.      Other such relief as this court deems appropriate.

## **COUNT IV**

**ROBERT J. LUTZ  vs. THE TOWNSHIP OF NORTH FAYETTE AND DETECTIVE DONALD J. COKUS, JR.; ABUSE OF PROCESS**

149.    The previous paragraphs are incorporated by reference as if set forth at length herein.

150.    Defendant Cokus used a legal process against Plaintiff Bob Lutz in the form of the citation that sent Plaintiff Bob Lutz to jail.

151.    This was done primarily to imprison Plaintiff Bob Lutz, whom Cokus despised and wished to do harm to, rather than a good faith attempt to arrest and imprison a child sex offender.

152.    As a result Plaintiff Bob Lutz suffered harms previously fully described elsewhere in the complaint.

153.    Therefore, Defendant Detective Donald J. Cokus, Jr. committed Abuse of Process by using his powers to increase the likelihood of Plaintiff Bob Lutz's arrest and imprisonment.

    WHEREFORE, Plaintiff respectfully request judgement for:

    a.      Actual damages for expenses incurred as a result of the abuse of process.

    b.      Compensation for non-economic damages

    c.      Attorney fees, costs, and expenses

    d.      Punitive damages from Defendant Cokus only, and

    e.      Other such relief as this court deems appropriate.

## COUNT V

**ROBERT J. LUTZ  vs.  DETECTIVE DONALD J. COKUS, JR.; PUNITIVE DAMAGES**

168.    The previous paragraphs are incorporated by reference as if set forth at length herein.

169.    Defendant Detective Donald J. Cokus, Jr., by his actions described previously in the complaint engaged in outrageous, evilly motivated, intentional, and/or reckless conduct against Plaintiff Bob Lutz and Plaintiff Mother.

170.    Defendant Detective Donald J. Cokus, Jr.'s conduct could be described as outrageous because it is conduct that is extremely looked down upon in today's society in the sense that police misconduct is scrutinized more than ever.

171.    Defendant Detective Donald J. Cokus, Jr.'s conduct is shown to have an evil motive by his vendetta against Plaintiff Bob Lutz and his desire to put the same behind bars because of his personal distaste for Plaintiff Bob Lutz.

172.    Finally, Defendant Detective Donald J. Cokus, Jr.'s conduct is shown to have a reckless indifference to the rights of others by depriving Plaintiff Lutz of his due process rights.


WHEREFORE, Plaintiff respectfully requests that the court considers these factors in all counts while considering whether punitive damages are appropriate, and Plaintiff seeks judgement against all Defendants, jointly and severally, in an amount to be determined by the Court, plus interest, attorney fees, and costs pursuant to 42 U.S.C. 1988, Jury Trial Demanded, plus and additional equitable and legal relief the Court deems proper.

Respectfully Submitted,

s/ Lawrence E. Bolind, Jr.

Lawrence E Bolind, Jr., Esquire
PA ID No.  44827

238 Main Street
Imperial, PA 15126-1021380

(724) 695-8620
(724) 695-8621 (fax)
*Bolindlaw@verizon.net*